The next case for argument is 24-1460, Fuente Marketing v. Vaporous Technologies. Good morning. It's been a while. Nice to see you again. Thank you. Please proceed. Good morning, Your Honor. May it please the Court. My name is Virginia Caron. I represent the appellant, Fuente Marketing Ltd. This case is about two marks. Fuente's standard character X mark, an applicant's mark, which is identical to Fuente's with the addition of a dot above it. And the Board improperly relied on that dot as the basis for concluding that the applicant's mark is not similar to Fuente's arbitrary X mark when used on inherently related goods traveling in overlapping channels of trade to overlapping consumers. And the Board's conclusion as to the similarity of marks, which is the only factor that it found weighed against the finding of similarity of likely confusion, is unsupported by the substantial evidence for the same reasons that the Court recently reversed the Board's dismissal of an opposition in Sunkist Growers v. Interstate Distributors. Just like in Sunkist, here there is not substantial evidence to support the Board's finding that the applicant's mark conveys a commercial impression that is different than Fuente's mark. The Board here concluded that Fuente's X mark and Vaporous' X dot mark are dissimilar based on its finding that consumers will perceive Vaporous' mark as a stick figure. It relied on an incomplete reading of the stipulation between the parties, a stipulation that simply quotes the mark's description in Vaporous' application. But the stipulation doesn't merely say that the applicant's mark is a stick figure. What the stipulation says is that Vaporous' X dot mark consists of an abstract stick figure consisting of two diagonal intersecting lines in the shape of a wide stylized letter X and a shaded circle above the letter X. The description of the mark was required because an abstract stick figure tells you nothing about what the mark could be. An abstract stick figure could be represented hundreds if not thousands. But the Board, taking your argument whether I agree or not, but didn't the Board say even if that weren't the case, I mean, even without relying on the stipulation, they're looking at the figures and saying there's a dissimilarity, correct? The Board didn't rely exclusively on the stipulation for its findings. The Board did find that there were visual dissimilarities between the marks because of the addition solely of the dot above the X. And our position is that if the Board had properly given the scope of protection due to the Fuente X mark, they found the X mark was arbitrary and thus at the highest level of distinction entitled to a broad scope of protection. And they also disregarded the fact that on less similarity is required on highly related goods, traveling to overlapping channels of trade to overlapping consumers. If the Board had properly considered the scope of protection afforded at the X mark, our position is that the addition of the dot to an otherwise identical mark would not have been enough to create a dissimilarity of the marks that solely based on that position would have outweighed all the other factors and resulted in a finding that there is not likelihood of confusion. But even leaving aside that the Board's... The Board did find the strength was neutral, right? Because of the X related to, in most circumstances, other words. So... The Board did find that the strength of the mark was neutral when it weighed the likelihood of confusion factors, Your Honor. And we disagree with that finding. The Board improperly disregarded the law about arbitrary marks. Once it... You know, the two parts of the strength of the mark are the conceptual strength and the commercial strength. And the Board found properly, we believe, that the X mark is arbitrary when applied to... So do you need both? I mean, there are all these DuPont factors, and I don't know how you separate them, too. But you're saying that the dissimilarity is contingent on... I mean, the two are similar. It's a strong mark, and that's why... So you kind of need us to disagree with the Board on both of those issues, right? That is correct, Your Honor. And the strength of the mark does... It has to be considered, the strength of the mark, both conceptually and commercially, have to be considered in defining the scope of the mark's protection. Because there's less similarity required when the mark is strong and it is applied to related goods that travel in overlapping channels to related consumers. And had the Board given any scope of protection to Fuente's standard character X mark, certainly the addition of a dot would not have been enough to distinguish it and take it out of the circle of protection that Fuente's mark was entitled. Well, I suppose it depends on how you look at the mark. You want to characterize it as an X with a dot on top. But the Board found it was a stick figure. And so it's not just an X with a dot. It's a body and a head. And if that's the way an ordinary consumer would perceive this, as a stick figure, as opposed to an X with a dot on top, why isn't that dissimilar? The problem, Your Honor, with what the Board did, is it relied solely on the stipulation to arrive at the commercial effect. Well, let's just say I don't read their decision that way. Because I do think they rely on the stipulation, but they go on to say more in their decision apart from the stipulation. So let's just get rid of that argument and say the Board found that this was a stick figure. And I know you would have a substantial evidence argument on that, but let's set that aside too. If this is a stick figure, isn't that dissimilar enough to defeat your case? No, Your Honor, it's not. The Board didn't consider how the consumers perceive the mark. They didn't look at commercial impression through the eyes of the consumers, which is required under the law that you do. They disregarded or didn't give any weight to the fact that there is record evidence that shows how this mark is used in the applicant's marking materials on its product's packaging and the intention that the applicant testified about what it intended the mark to be. It intended the mark to be a representation of its dab X mark, with the dot or the circle being a dab, because that's the shape of a herbal concentrate that's placed in its machine. And the X bringing to mind and associating the mark with its dab X X factor, that these products are supposed to have an X factor because they're somehow cutting-edge technology or on, you know, advanced technology. They're an evolution of the dabbing materials to the next level. And the Board disregarded that evidence. And in light of that evidence, there is no substantial evidence to find that the consumers would view the marks merely as a stick figure. They would view it as a virtual representation of the dab X mark. And there's no getting away from the fact that it is an X, whether it has a dot above it or not. There's simply no record evidence, much less substantial record evidence, that the consumers would perceive the mark as merely a stick figure. They would perceive it as anything other than an X with a dot over it. And, indeed, the applicant has not been able to point to and the Board did not point to any instance that's consumer-facing where the mark is referred to in any way other than as an X with a dot over it. There is nothing that shows. Can you just remind me of something? I don't remember. Is there anything in the record about people making anything of the fact that, although there might be said to be an X in some sense, the two crossed lines, that you're commonly the letter X has a much wider east-west angle than north-south angle and their stick figure, lower southern hemisphere of it, is the reverse, is a much wider north-south angle than east-west angle. Was that different? Did that play a role in this case at all? No, Your Honor, it didn't. And the reason why is that Fuente's registration is for a standard character X. And the Board acknowledged that the standard character registration gives Fuente the right and the ability to protect all representations of X in any form of presentation as long as it's recognizable as an X. And, indeed, the stipulation, if we're going to pay attention to the stipulation, our position is that it's improper to use the stipulation to assess commercial meaning of the mark because the stipulation is not consumer-facing. But if we're going to pay attention to the stipulation, we have to read it all. And what the Board did is the Board only picked out the two-word stick figure. I understand that, but I actually just found it because I knew it was there. I think the Board, in a footnote, said that the stipulation is not what is dispositive, but whether the X dot mark is similar to the Fuente's X mark. That's at JA44. Footnote 70.  Yes, Your Honor. So we can move away from exclusive reliance on the stipulation. So I take your point. It starts with stick figure, but it mentions X at the beginning. But the Board seems clearly not to have relied on that, and certainly not to have relied on that exclusively. So to the extent that the Board didn't rely exclusively on the stipulation, then it was required to compare the mark in the drawing to Fuente's prior mark. And the mark in the drawing is a wide, stylized letter X with a circle or a dot above it. So how would you suggest we figure this out? Does somebody have to give us a survey, do a survey of consumers and say, would you be confused and would you be the same? How many of you think this is a stick figure? I mean, what are we to do with this? No, Your Honor. What you need to do and what you're only allowed to do is look at the record evidence. And what the record evidence shows is that the applicant's intention was that the mark be representative of the mark DABX, with the circle being a DAB and the X calling to mind an X factor. And then you look at the commercial use, what consumers would actually see. And what you see there is that this X with a circle over it, or X with a dot, is always used in close association with the mark DABX. And it is used along with words such as evolution. Is that inconsistent with their assertion that this is a stick figure? Excuse me? Is that inconsistent with the assertion that this is a stick figure? Well, I don't know that it's necessarily inconsistent, but the assertion that it's a stick figure is just not simply complete, Your Honor. Because if I said something is a stick figure, it could be a capital letter T or a lowercase letter T with a circle or a dot above it. And to some people it would look like a stick figure. But it doesn't take away from the fact that it's still a capital letter T that's combined with something to form a stick figure. And that's what's going on here, is that there is undeniably the letter X stylized. Yes, we acknowledge that. But with a dot or an X above it. And there's just no evidence, much less conclusive evidence, that a consumer would see that simply as a stick figure and not see the X there. And the X is not so disguised.  I mean, I can't unsee this because I read your brief first and see it as an X where you describe it with an X as a dot over it and I see it. But if I'd read their brief first and they'd said this is a stick figure, I might see it as a stick figure. And this is a factual finding, right? Whether it's a stick figure or not. And if the board says it's a stick figure and that's how a consumer would perceive it, then is there no substantial evidence? There's not no substantial evidence. There is no evidence that there is anything from a consumer or consumer facing that suggests that this mark is a stick figure. Thank you. We'll reserve the remaining time for rebuttal. Thank you. Good morning. Good morning. May it please the Court. I am Glenn Nuttall. I'm representing Vaporist Technologies. And in this case, I think the key here is the finder of fact was the board. And the facts that find that the standard is, of course, is there substantial evidence? Well, you want to start with that last point. What's the substantial evidence to support a factual finding that this is a stick figure? Well, the board actually describes that. It spends a few pages on it. And it was just mentioned also that the board, their view of the similarity, they wanted to look at the mark itself, the drawing of the mark. And the drawing of the mark is in the record there. It is the dots and the cross lines. And, in fact, there is evidence in the record that Vaporist, as they were developing this mark, they purposely flattened the X. So that would make more of a representation of arms and limbs to make it look like a dab man. They called it a dab man. Where is that evidence? That is, it's actually mentioned in Flinty's brief at H-12, brief library. It's around there. I believe. All right. Around there. All right. Does the board reference it in its opinion? It was a deposition. Is it cited or relied on in the board's opinion? No. What's in the board opinion? Well, the board's opinion focused on the drawing of the mark and what saw as the drawing. And it also discussed the stipulation. It started off with stipulations noting that it is a stick figure. And at the end of the day, the board agreed that it was a stick figure when they looked at it. The board did not. Is that enough for the board to agree that it's a stick figure? Or doesn't the board have to find that the relevant consumer would perceive it as a stick figure? The board did find, in fact, that the relevant consumer would perceive it as a stick figure. And not as a letter expert, as a stick figure. And their evidence for that is they looked at it and said this is what a consumer would perceive it as? A combination of looking at it, looking at the design mark, looking at the stipulation. Let's set the stipulation apart because I struggle with that a little bit. I don't know that that stipulation was intended to address what a relevant consumer would see it as. And if that's the case, that can't be substantial evidence for the factual finding. All right. So your view is the board can look at this and make a factual determination on its own that this is a stick figure? Well, the board did acknowledge that it's a subjective view from their point of view. But they didn't just say that out of the blue. The board acknowledged that part of the figure is in the shape of an X. The board acknowledged that standard character X can use its own style. And even mentioned that even if there was an X in the same style that vaporous used, it would still be transformative. It would still be a stick figure. You have to take the mark as a whole and found that if you took the head off, it would be totally different. That the head, the dot, or the shaded circle, makes all the difference in changing the mark just from an X to something different, which is a stick figure. And again, they acknowledge that it's a similar subjective view. Is there anything in the record anywhere that's beyond the board's factual finding that suggests this would be seen as a stick figure? There is no record of consumers commenting on it, consumers talking about it. Nothing like that. I'm a little puzzled, frankly, about what our framework for this is. Is the board entitled to just look at a mark and say, well, this is how a consumer would perceive it without any additional evidence? I mean, surely the board is not necessarily the relevant consumer. So how can they make that factual finding without at least citing to something in the record? And if all that we have in the record is the stipulation, and that was a legal error to rely on it for that purpose, then what do we have for substantial evidence? Well, it referred to the stipulation. It didn't rely on the stipulation. I know, but I guess what we're asking you is what did they rely on if we set the stipulation apart? And unless I'm mistaking, all you pointed to me is that the board looked at it and said this is what a relevant consumer would be. But I don't think the board can make factual findings out of the blue without some evidence. Substantial evidence is not a high burden, but it requires something beyond their subjective views, doesn't it? Yeah, but what it is based on, it was based on the drawing as seen by the board. In these cases, do they typically have surveys of consumers that enlightens the- Not typically at this stage, because this was a framework application. So it was an intent-to-use application. Okay, I have a related question. But in a lot of the pictures that are included in the board's opinion, with the exception of one of the two on Appendix 23, which is just an X on black, the rest of the pictures we have, the X is kind of blended into a lot of other stuff in there. You're talking about Fuente's X? Yeah. Did the board refer to that? I mean, do you think that influenced their looking at, like, this isn't just a standalone X. It's mushed up with all this background noise and all these different colors. Did the board rely on that factor at all in its conclusion? Well, the board actually discussed that a lot, but in a different context. It was in the context of a family of marks. Fuente had originally asserted several registrations, all of which had an X joined with something else, XFF. The labels that go on their cigars are a very fancy XFF. And the board did point out that the mark X was used alone only a handful of times. So was that in the context of the commercial aspect of strength and the commercial strength, that the X alone did not have much commercial strength for Fuente? It was. It was exactly that. And the board, in fact, did address that. So Ms. Karen says that there's a conceptual strength aspect and a commercial strength aspect. And as I understood, she's really relying on the conceptual strength. And for that, I think I heard her say that there is commercial strength, a significant, I'm sorry, is conceptual strength sort of as a matter of law because the X alone is arbitrary. Do you have any commentary on that? Yes, and the board did address that. It did address conceptual strength. The board said that the, in its holding, said that the X was afforded the strength given to any inherently distinctive mark. That was conceptual strength. But the board noted that on the commercial side, it was barely ever used in the last 30 years. So let me just, so the word strength has two different meanings. Perhaps the difference is relevant. One means actually strong. The other is simply a property on a scale which can go from tiny to large. When the board said that it has, the X here has whatever strength, that this amount of strength, whether large or small, that an inherent, that a arbitrary mark has, was it saying that the mark has a high degree of strength? That is, is strong because of its arbitrariness? In fact, no. What is the relevant law on that point? I mean, X, the letter X by itself, stands for almost nothing. It's probably not nothing, but almost nothing. So it would be inherently arbitrary in almost all contexts. Perhaps not here if people knew about the history of Fuentes and the secrecy of the project. So maybe it's not completely arbitrary. But is it, though, law that inherent arbitrariness of something as inherently meaningless as the letter X gives it great positive strength? It's not. The board mentioned that it was supposed to be given the same strength as any inherently distinctive mark, and that's conceptual strength. But the board really focused mostly on the commercial strength and the fact that over the last 30 years and hundreds or maybe thousands of advertisements, there's only a handful of times that the X has been used alone. And so the board held that it was neither very strong nor very weak. So whatever the conceptual strength could do, it didn't seem to move the needle. The overall strength noted by the board was kind of meh. And that's the conclusion that the board reached. And against that conclusion, since the ordinary consumers held by the board from their observation, and admitted the observation, and they did admit that it's subjective and that different people could come to different conclusions, but quite frankly, that's how consumers are too. If somebody came and saw the mark, what would they see? Now, Fuente has mentioned that during the development of the mark, the vaporist had an idea that the dot, the head, could represent something called a dab, which is their product, a vaporist. And they thought that was pretty cool. But that was never marketed, and there's no evidence at all that it was ever marketed or that consumers have ever seen that. In fact, a consumer would have to put a lot of thought and have a lot of big ideas and be fairly sophisticated to figure that out. The fact is that the only real substantial evidence that we have is the drawing of the mark itself. I don't remember what the evidence is. I thought there was some evidence or anyway discussion of the use of this figure in conjunction with the separate mark, if that's the right term, dab X, D-A-B-X. Yeah, there is a mark dab X, D-A-B-X, and the dab man mark does appear on the same products as the dab X mark. So that is some external evidence, but a consumer would have to figure out that. Do I take it that the other side has suggested that that affiliation in the real world is evidence that consumers would understand the mark that's at issue, the cross lines with the dot above it, as a dab with whatever the thing is underneath? I think so. I would like to mention the recent SunKiss case that Conte submitted about a week and a half ago. You're very familiar with it, more familiar with it than I am. But that case, it turned on not being substantial evidence. The board had relied on marketing evidence other than the drawing of the mark, Kiss, just the mark Kiss, where the marketing evidence apparently had lips. And the board relied on that to say, hey, its commercial impression has to do with lips. But it wasn't the mark itself, and that was inappropriate, that was error. Here, I think the same thing applies. We should be relying on the drawing itself, and that's more important and better evidence than external evidence. Now, really the only evidence that the board did not expressly talk about was this hidden meaning of the head or the dot possibly representing a dab. Everything else, the fact that there's an X in the mark, the board addressed that. The fact that you can change the style, the board addressed that. And the board obviously put itself in the eyes of the consumer. It had a subjective view, and it made that subjective determination. But frankly, there's no evidence to the contrary. And so in our view, then, there is substantial evidence to support the board's positions. Just for my own curiosity, on the point of saying they're the same consumers, cigars and vapor as your product, was there some, there was no dispute about that, right? Everybody agreed that these are all, the market is smokers, and that's the same, or was there a dispute that was resolved by the board as to who the relevant market would be? Well, the dispute there has to do with the strength of a presumption. Now, the mark, it's smokers because it's basically presumed to all go together. It's not, it doesn't reflect reality, but we realize that case law doesn't always reflect reality in this mood. But our position is that since it doesn't reflect reality at all, that it shouldn't be given much weight, that particular factor. Okay, thank you. Okay, thank you. I'm happy to address any questions that the board might have. So, I'm still struggling with how much authority the board has to look at a mark and say this is dissimilar. And they must have some, right? So, instead of an X with a circle, you have a Y with a circle. And it would have three of the four arms and legs, but not the four. Could the board just look at that and say, well, this is so dissimilar because it's not an X. It's still maybe some kind of stick figure without a limb, but it's not dissimilar because it's a Y instead of an X. Do they need any evidence beyond that to say these two are dissimilar? Yes, your honor, they do. First of all, the board is required to consider a number of factors in assessing the similarity. Okay, let me back up. Let's just, let's look at this narrowly, though. Can they say an ordinary consumer looking at an X versus a Y with a dot over it would not find those dissimilar? Can they just rely on the drawing itself? No, your honor, they can't. As this court decided in Duopro versus Environmental, if the commercial impression of the mark conveys, that the mark conveys must be viewed through the eyes of the consumer. Yeah, but my hypothetical has them looking, saying this is how, because it's a Y instead of an X, a consumer, they're doing it from the right lens. Legally, they're correct. A consumer would not perceive this, and so that's correct legally, but your view is there has to be some independent piece of evidence to corroborate that factual finding? Yes, your honor, like in the Duopro case where the board failed to cite any evidence indicating how a consumer would perceive the mark. I guess what I'm getting at is can the mark itself be evidence? Well, the mark itself can be evidence of a similarity, a visual similarity, but not a commercial impression similarity. That has to be viewed through the eyes of the consumer. So what does the evidence consist of? Surveys? Is that, I can't, surveys of consumers in the real world market? The consumer facing materials, just like in Sundquist where the board and then the court assessed what the consumers actually saw. Now in that case, there was a question about whether consumers saw the material that was relied upon, but in this case, there's no question. The website, the product packaging, and the product advertisements are consumer facing, and the board didn't look at those materials. They didn't cite those materials in evaluating the commercial impression. I'm not so much concerned about what the board, you think, didn't look at. I'm concerned about whether the mark itself can be substantial evidence for a finding on dissimilarity, and it seems to me that it has to be able to be evidence. I mean, if you came in with something, I mean, a picture of Snoopy, and said, well, this is similar to our X mark, the board can look at those two things and say, no, they're not similar, right? But in that instance, that's the visual similarity, Your Honor, and the court can probably make it. But isn't that finding a visual similarity if it's found that it's visually dissimilar enough to support a finding that a consumer wouldn't perceive them the same way? Because what you're getting at is something I don't think we've ever required, and it seems like it would be your burden anyway is some kind of evidence on what the consumer would perceive. For a conclusion on the consumer impression, it is required. You have to look at that. The board can properly make its own determination on the visual similarities, but the board has to assess visual, sound, connotation, and marks. The board can't make an inference from something that's so completely visually dissimilar that a consumer would never confuse these? That would be visual similarity, Your Honor, but not commercial impression. The board cannot impose its own view of the commercial impression of the mark. It has to look at the relevant consumer, and that's the law that was established by this court in the Duopro Meredith Court versus Environment Medical Devices case. Okay, time's up. Thank you. We thank both sides. The case is submitted.